Matter of L.L.B. v F.C.S. (2007 NY Slip Op 50786(U))

[*1]

Matter of L.L.B. v F.C.S.

2007 NY Slip Op 50786(U) [15 Misc 3d 1121(A)]

Decided on April 12, 2007

Fam Ct, Onondaga County

Hanuszczak, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 12, 2007

Fam Ct, Onondaga County
In the Matter of L.L.B. v. F.C.S.
F-XXX07

Frank H. Hiscock Legal Aid Society, Michael J. Younis, Esq., attorney for the petitioner;Respondent, pro se; Joseph M. Kelly & Associates, Neil M. Gingold, Esq. of counsel, for Onondaga County Department of Social Services; Lisa M. Fahey, Esq., Law Guardian

Michael L. Hanuszczak, J.
On September 12, 2006, the petitioner filed "Affidavit in Support of Motion to Vacate Order of Filiation Entered Upon Default." The subject child was born on March 20, 1990, and the Order of Filiation and Referral to Hearing Examiner was dated April 3, 1997.
The matter proceeded to a hearing on March 23, 2007, with the petitioner having appeared together with his assigned attorney; the attorney for the Onondaga County Department of Social Services having appeared as petitioner's counsel in the original paternity petition; the Law Guardian having appeared; and the respondent having failed to appear.
In his motion Affidavit, the petitioner stated that he was incarcerated in the Wyoming Correctional Facility at the time of the original paternity proceeding. The petitioner also stated that he never had "unprotected" sexual relations with the mother.
At the hearing, the petitioner testified in support of the allegations in his motion papers. The petitioner testified that he was incarcerated in the Onondaga County Justice Center in April, 1997. He testified that he had sexual relations with the respondent in 1986, but that he always used a condom. He also testified that he lived in Brooklyn from the fall of 1987 until 1992 and had no sexual relations with the respondent during that time.
On cross-examination by the County attorney, the Court received into evidence, "Attorney's Family Court Activity Sheet," dated February 13, 1997, which is a form used by the County attorneys with their handwritten notes. The document contains handwritten notes concerning the L.L.B. and F.C.S. matter, Docket No: P-2032-96 made by the County attorney. One of the notes indicates that the respondent requested that the Court adjourn the Court date until after the first week in March because he is in "Rehab." The petitioner denied making any such request, but the Court takes judicial notice of the Court notes for February 13, 1997 which indicate that the case was adjourned to April 3, 1997 at 2:00 per the request of the respondent.
The Court also received an Affidavit of Service, dated August 19, 1997 together with [*2][*3]attached documents, indicating that the Order of Filiation and Referral to Hearing Examiner was served on "M. Kinsler" at the petitioner's residence, who was stated to be a friend of the petitioner. The Affidavit notes that M. Kinsler told the process server that the petitioner was "shopping. "
The petitioner testified that he filed an action to vacate the default Order of Filiation in early 1999. He stated that he appeared in Court but that the respondent did not appear. The petitioner testified that he thought the "case" was dismissed in his favor because the respondent did not appear. On cross-examination, the petitioner stated that he did not ask for a DNA test. The Court takes judicial notice of the application, which was filed on April 6, 2000 and which was dismissed without prejudice on May 8, 2000 for lack of jurisdiction as the respondent was not served with the application. The Court notes indicate that the petitioner was present at the May 8, 2000 Court appearance.
After the conclusion of testimony, the attorney for the petitioner urged the Court to vacate the default order of paternity and order DNA testing. The County attorney and the Law Guardian jointly argued that the matter should be dismissed as untimely and legally insufficient
Section 525 (c) of the Family Court Act states that a respondent shall have the right to move for relief from a default order of filiation within one year from the date the order was entered. Although the petitioner did not meet the statutory requirement for bringing a motion to vacate a default order within one year of its entry, "the general rule with respect to opening defaults in civil actions is not to be applied as rigorously in actions or proceedings involving the custody, care, and support of children." (Patricia J. v. Lionel S., 203 AD2d 979.) The motion to vacate a default order must be supported by a reasonable excuse for not appearing and a meritorious defense. (Helen T. v. Roosevelt B., 256 AD2d 583).
The Court finds that the petitioner failed to demonstrate that he had a reasonable excuse for not appearing at the paternity hearing in 1997. The adjourn date for the hearing was given at the request of the petitioner and there is no credible testimony that he was in prison on the date of the hearing. Indeed, the petitioner's testimony that he was in the Onondaga County Justice Center contradicts his statement on his sworn petition that he was incarcerated at the Wyoming Correctional Facility at the time.
The Court also finds that the petitioner's conclusory denial of unprotected sexual relations with the respondent is insufficient to constitute a meritorious defense to the sworn paternity allegation. Significantly, the petitioner did not deny having sexual relations with the respondent during the time frame for conception. (In re A.C.S. Child Support Litigation Unit v. David S., 32 AD3d 724.)
The Court also finds that the petitioner was not credible in his assertion that he believed that he did not need to take further action after his prior motion to vacate the default order of filiation was dismissed by the Court in 2000.
Based upon these findings, the Court denies with prejudice the petitioner's motion to vacate the Order of Filiation and Referral to Hearing Examiner, dated April 3, 1997.